Joyce, Respondent, vs. Sauk County, Appellant.

*December 7, 1932—January 10, 1933.*

244

C. M. La Mar, district attorney of Sauk county, and H. M. Langer of Baraboo, for the appellant.

For the respondent there was a brief by Grady, Farnsworth & Walker of Portage, and oral argument by Dorothy Walker and Daniel H. Grady.

ROSENBERRY, C. J.   Upon this appeal a great many questions are raised with reference to procedure upon the trial, particularly the admission of evidence over the objection of the defendant.   We have examined these assignments of error with care.   Most of them can be disposed of as nonprejudicial for the reason that they related to matters which were found in favor of the defendant by the jury.   As to the remainder we find nothing prejudicial or which merits special treatment.

The controversy between the parties to this action relates mainly to two principal questions: (1st) the classification of the yardage admittedly excavated by the plaintiff under his contract; and (2d) the right of the plaintiff to recover for yardage in excess of that allowed him by the estimate of the engineer and in excess of that indicated by the plans and specifications.

(1) The contract provides the method of measurement.

"12.8   *Method of measurement.*   All accepted road excavation shall be measured in its original position by the method of average end areas with no correction for curvature.   Solid rock in ledges shall be measured from cross-sections taken before and after the cuts are opened.   The yardage of loose rock in the form of cut shall be determined

by estimating its percentage of the entire cut. The yardage of loose and solid rock in the form of detached boulders shall be determined by estimating three dimensions. In all cases where classification of excavation is necessary such classification shall be made by the engineer as the work progresses, and in conference with the contractor or his authorized representative. If dispute arises as to the proper classification the contractor shall file his protest in writing within twenty-four hours, otherwise no change in classification will be allowed."

The contract also contains the following provision:

"5.1 *Authority of engineer.* The engineer shall decide any and all questions which may arise as to the quality or acceptability of materials furnished and work performed and as to the manner of performance and rate of progress of the work and shall decide all questions which may arise as to the interpretation of the plans and specifications, and all questions as to the acceptable fulfilment of the contract on the part of the contractor, and as to compensation. His decisions shall be final and he shall have executive authority in accordance with paragraph 8.8 and other measures within these specifications to enforce and make effective such decisions and orders as the contractor fails promptly to carry out."

A consideration of paragraph 12.8 indicates that a proper classification of material involves the exercise of judgment and is not a mere matter of mathematical computation. It appears from the evidence that the engineer never made any classification in conference with the plaintiff as the work progressed. He made it when and as convenient for him and the result of his classification was not disclosed until the completion of the work. After the completion of the work, Mr. Greenwood, the engineer, allowed the plaintiff 29,807 cubic yards of excavation classified as follows: 24,983 cubic yards of earth, 2,809 cubic yards of loose rock, and 2,015 cubic yards of solid rock. The arbitrators, Burch, Bean, and Busby, found that there were 30,576 cubic yards of excavation classified: earth 21,810 cubic yards, loose

rock 3,511 cubic yards, and solid rock 5,255 cubic yards. The discrepancy between the amount allowed by the arbitrators and the amount allowed by Mr. Greenwood, the engineer, arises principally with respect to classification. According to Mr. Greenwood's estimate the estimated price of the work, not including grubbing and laying of pipes, was $13,784. He allowed $18,629.34. The arbitrators awarded $23,964.30. If plaintiff be allowed his claim for extra yardage the total amount would be $28,098.62, which is more than double the amount of the estimate. The arbitrators testified as witnesses upon the trial, they were examined and cross-examined exhaustively, and the jury found that the arbitrators had correctly classified the amount of yardage allowed by the engineer. So far as classification is concerned, it must be held that the determination of the engineer is not conclusive because not made in conformity with the contract. His estimates, as already pointed out, were never made in conference with the contractor. If the defendant is to claim the benefit of finality for the engineer's findings, such findings must be made in accordance with the terms of the contract. No such provision is inserted in the contract at other points, apparently for the reason that with respect to other matters there is not the opportunity for such divergence of opinion as there is in the classification of material. Requiring the classification to be done in conference with the contractor gives the contractor a right to be heard and advises him of the result.

The arbitrators were all experienced engineers of established reputation. They pursued the method usually and customarily employed by engineers in work of that character. The evidence which they gave upon the trial abundantly sustains the finding of the jury with respect to classification. In this connection it is contended by the plaintiff that the judgment should be modified by allowing a recovery of approximately $190.38 on account of yardage claimed to

be due under the testimony of Mr. Greenwood but not included in his allowance. The plaintiff in this case had judgment exactly in accordance with his second motion for judgment which was for the sum of $4,934.70 with interest. There appears to have been no motion in the court below to amend this judgment or correct it in accordance with the claim now made nor was the contention now made brought to the attention of the trial court. The plaintiff having had judgment in his favor for the amount asked, he has no reason to complain on appeal. While it may be argued that the amount of $190.38 was included in the larger claim, what was claimed was compensation for the total amount of yardage, not compensation on account of an error in Mr. Greenwood's computation. The engineer's determination as to quantity is final unless impeached for fraud or mistake. No issue of that kind was litigated on the trial.

(2) The plaintiff in performing the contract excavated 35,844 cubic yards or 6,037 cubic yards more than he received compensation for under the verdict. The jury by its fourth finding found against the plaintiff's contention, and the trial court denied plaintiff's motion for judgment for compensation for extra excavation, which motion was based upon the proposition that the plaintiff was entitled to recover therefor as a matter of law. Plaintiff's contention is based upon this: that the county highway committee and engineer by their conduct as the work progressed ratified and authorized the changes made by the plaintiff and thereby assumed and agreed to pay therefor at the contract rate. A determination of this question requires us to examine somewhat the authority of the county highway committee and the engineer in the premises.

Sec. 83.04 (1), Stats., among other things, provides:

"The manner of advertising for bids and the forms of bids, contracts and bonds shall be prescribed by the State Highway Commission and shall be uniform."

In the awarding of contracts the county highway committee acts for the county (sec. 82.06), but no contract can be awarded without the written approval of the State Highway Commission. The contract in this case is in accordance with the form prescribed by the State Highway Commission.

Sec. 4.3 of the contract relates to increased or decreased quantities. Among other things it was agreed—

"that all alterations shall be ordered in writing; and that equitable adjustment of compensation satisfactory to the contractor shall be made when such alterations involve an increase or a decrease of more than 25 per cent. of the total cost of each or any item calculated from the original proposal quantities and the contract unit prices; provided further, that before work is started on any such alteration of over 25 per cent. a supplemental agreement setting forth the adjustment shall be executed by the engineer and the contractor."

There is no contention that the engineer gave to the plaintiff any written order directing him to do any excavating other than that provided by the plans and specifications except slight changes, compensation for which has been made. If the claim of the plaintiff with respect to extra compensation should be allowed, substantially one hundred per cent. would have been added to the original estimate. Although the contract contains a clause (9.1) to the effect that the contractor will in all cases be paid for the actual amount of work performed in accordance with specifications as shown by the final measurements, this must be held to apply to work done in accordance with the terms of the contract, the specifications being a part of the contract.

By sec. 4.3 of the contract it is provided that the engineer may make such alterations in the plans or in the quantities of the work as may be considered necessary or desirable; provided, however, that all alterations shall be ordered in writing. Under the law, when the county board has deter-

mined what highways shall be improved as county trunk highways and has appointed the county highway committee, it has done all that it can do with respect to the letting and execution of contracts for highway construction on a prospective state highway. Thereafter the matter is within the control of the county highway committee subject to approval by the State Highway Commission. The provisions of the contract with respect to extra work, the manner in which it is to be authorized and the amount which is to be paid therefor are quite elastic, and a very considerable authority to modify the contract to meet the exigencies of the work of construction as it proceeds is conferred upon the engineer. In this respect the engineer represents the county, which is ultimately liable for any compensation due a contractor under the contract. The State Highway Commission having been invested with authority to prescribe the form of the contract, which as interpreted means the substance and terms of the contract, it determines the limits of the engineer's authority. His power to bind the county must be found in the contract. It hardly needs to be said that the power must be exercised in the manner prescribed. The engineer derives his authority from appointment, directly or indirectly, by the State Highway Commission, pursuant to the power conferred upon it by sec. 82.02 (1) (a) and (3). He is not an employee of the county. The county has no authority or jurisdiction over him and his authority to bind the county is derived from the contract executed in accordance with the forms prescribed by the Highway Commission.

The contention of the plaintiff is that because the engineer, who in this case also acted as an inspector, was frequently on the work and the county highway committee were there officially and saw the manner in which the work was being carried out, and that from mere observation it would have been apparent, especially to the engineer, that more work was

being done than was required by the plans and specifications, that as a consequence thereof a better and more acceptable highway was being constructed, there arose on the part of the defendant county an implied agreement to pay for such extra work. It is considered that this contention cannot prevail. We find no case at all parallel to this case. There are many cases involving contracts for railway construction, for the construction of buildings, dykes, ditches, and other works, but none in which the contract is let in the manner prescribed by the law of this state for the construction of state highways and none in which the form of the contract which the county must enter into with the contractor is prescribed by an administrative authority such as the State Highway Commission. It is quite apparent that the plaintiff at least knew that he was exceeding the plans and specifications. It is also apparent that the engineer, who was also inspector, from time to time classified the material excavated and excluded therefrom such material as was excavated beyond the line called for by the plans and specifications. In making the classification the engineer disregarded the contract and did not do it in conference with the contractor. The contractor proceeded with his work without requiring a written order or writing signed by the engineer and contractor as provided by sec. 4.3 of the contract.

The powers and duties of the county highway committee are prescribed by sec. 82.06, Stats., and no authority appears to be conferred upon the county highway committee to do anything with reference to extra work done under a contract entered into with the approval of the State Highway Commission. Having no power to modify or in any way change the contract existing between the plaintiff and the defendant, we are unable to see how its conduct could be the basis of an implied promise by the defendant to pay. The contract itself makes no provision for any such modification. Neither does it state in what way the engineer for a particular job

is to be chosen.   The state engineer through his subordinates and with the approval of the Highway Commission apparently designates the person who is to act as engineer in a particular case.   The evident purpose of the statute is to limit work done to the plans and specifications with reference to which the bid is made, giving the engineer power to prescribe alterations as the work proceeds, and in case these alterations exceed twenty-five per cent. of the estimated quantity, the contractor cannot be required to perform them unless he agrees in writing with the engineer to the modifications.   If the contractor does more work than the plans and specifications call for without having first procured a written order therefor, the county is not bound.   All parties to a contract should pay some attention to its terms and proceed in accordance therewith.   Municipal corporations can only be charged in the manner prescribed by law, and the power of an officer to deviate from an authorized contract or to waive its provisions is very limited.

*By the Court.*—Judgment affirmed.